UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| KATHRYN LEE SCHROEDER, ) | Case No. ED CV 13-01750 (AS) |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND** |
| ) | |
| v. ) | **ORDER OF REMAND** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On April 13, 2010, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge (Docket Entry Nos. 7-8). On February 12, 2014, Defendant filed an Answer along with the Administrative Record ("AR") (Docket Entry Nos. 11-12). The parties filed a Joint Position Statement ("Joint Stip.") on June 13, 2014,

setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 18).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed October 2, 2013 (Docket Entry No. 5).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 13, 2010, Plaintiff, formerly employed as a senior park aide, real estate housing surveyor, data conversion operator, administrative supervisor, and administrative assistant, (see AR 49, 141), filed an application for Disability Insurance Benefits, alleging an inability to work since December 2, 2009. (AR 120-27). On November 15, 2011, the Administrative Law Judge ("ALJ"), Mark Greenberg, heard testimony from Plaintiff and vocational expert Sandra Fioretti. (See AR 37-53). On March 23, 2012, the ALJ issued a decision denying Plaintiff's application. The ALJ determined that Plaintiff had severe impairments -- degenerative joint disease, de Quervain's tenosynovitis, epicondylitis, chronic pain and carpal tunnel syndrome[1] -- but found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 18-29).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 14). The request was denied on November 19, 2013. (AR 8-12). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

---

[1] The ALJ found Plaintiff's impairments of hyperlipidemia depression to be nonsevere. (See AR 20-22).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in failing to properly assess Plaintiff's testimony regarding her hand limitations. (See Joint Stip. at 4-15, 21-23).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

**A.  The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to properly assess Plaintiff's testimony regarding her hand limitations. (See Joint Stip. at 4-15, 21-23). Defendant asserts that any error by the ALJ in assessing Plaintiff's testimony was harmless, and alternatively that the ALJ provided valid reasons for finding Plaintiff only partially credible. (See Joint Stip. at 15-21).

Plaintiff made the following statements in a questionnaire dated May 18, 2010:[2]

> (1) she is able to climb stairs; (2) she is not able to lift heavy items, and lifting lighter items sometimes causes a shooting pain or burning sensation; (3) she is able to carry her purse over her shoulder, light items for a short period of time, and light grocery bags into the house; (4) she does grocery shopping one to two times a week (but her husband carries in the heavy items); (5) with respect to house cleaning, she is able to wash dishes, load the dishwasher, and

---

[2] The first page of the three-page questionnaire is not contained in the record.

do minor straightening up, but she is not able to lift pans or do major cleaning without help; (6) she drives a car one-half hour at a time to go to doctor appointments and run errands, but she does not drive after taking medication; (7) with respect to yard work, she is able to sweep sidewalks and do some watering, but she is not able to take care of the garden or do lawns (her hands cramp when she uses clippers) or wind up the hose; (8) before her disability, she loved to cook and to have a clean home; (9) she has difficulty finishing housework -- when she cannot finish a task, she has her husband help her, and if her husband is not available, she will resume the task only after icing her hands and taking medicine; (10) she sleeps approximately 4 hours, and sometimes just lays awake for several hours; (11) during the day she requires rest periods or naps -- the length of time depends on the activity and the medication she takes; (12) she takes Naproxen (twice daily), Ibuprofen (three times daily), and Hydrocodone (as needed); (13) she wears braces on both her hands to limit movements which cause sharp pain; and (14) her condition is getting worse. (See AR 174-75).

At the administrative hearing, Plaintiff testified as follows:

She last worked in September 2009 (her doctor chose December 2, 2009 as her disability date). Her job as a surveyor involved administrative, not surveying, work. After she was not able to use her hands (i.e., accounting, 10-key), she became a boat inspector, but that ended up being too physical for her. She and her husband live with their daughter's family. (See AR 39, 49).

She has pain in her wrists, hands, knuckles, and joints of both hands. With medication, she has an average pain level

4

of 8 (out of 10). The pain is constant. Her arm goes numb when she sits for a long time. For the numbness, she shakes it out, squeezes it, or puts on a wristband (she has several different kinds). She sleeps 3 1/2 to 4 hours a night (she wakes up usually because of pain caused by basal joint arthritis on her left thumb), and she sometimes goes back to sleep for a couple of hours after 3 or so hours of tossing and turning. (See AR 44-47).

She currently takes Vicodin, Ibuprofen, Naproxen, and a cholesterol medication. The Vicodin makes her feel loopy, forgetful, confused and disoriented. (See AR 43-44). She has been taking Bupropion for depression for about a year. The medication has helped her a little with her depression; she feels better. (See AR 48-49).

Her surgeries -- left wrist (2008), right wrist (2009), carpal tunnel on right hand (October 2011) -- were not successful. (See AR 47).

Since her most recent surgery, things have worsened. Prior to that surgery, she could lift things, although it was painful. Now she cannot lift any weight with her right hand (her dominant hand), and can lift probably 5 to 10 pounds with her left hand. She can work on the computer (i.e., email, Facebook) for about 10 to 15 minutes a day. She is not able to drive. She is able to go shopping (but needs help carrying heavier items). She has dropped many things while carrying them. She does not have any problems with standing, walking or sitting. (See AR 40-42, 47).

Since December 2009, her daily activities have varied day to day, and she has good days and bad days. She maybe has two good days a week. She watches television a little. She does

>laundry. She makes the bed (pulling back the covers). She is not able to cook a meal by herself (her daughter cooks the meals) or lift pans. When she tries to prepare meals, work on the computer, or write checks to pay bills, she feels pain after. She requires assistance with getting dressed (i.e., she cannot fasten her bras, wear a belt, or tie shoes). There have been times since December 2009 when she needed help showering and shampooing (for sometimes two months at a time). She gets out of the house about three times a week to go to the store and/or run errands. She is not able to do recreational activities -- she had to give up bowling and fishing.

(See AR 39-40, 42-44).

The ALJ found that Plaintiff had the following residual functional capacity ("RFC")[3]: the ability to perform medium work[4] as follows: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking for 6 hours out of an 8-hour workday with regular breaks; sitting for 6 hours out of an 8-hour workday with regular breaks; unlimited pushing and/or pulling, other than as indicated for lifting and/or carrying; and limited to frequent fine or gross manipulation on the right side. (See AR 22).

After summarizing Plaintiff's testimony (see AR 23), the ALJ made the following assessment of Plaintiff's credibility:

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

6

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment herein.

(AR 23).

After then summarizing the medical evidence (see AR 23-26), the ALJ wrote:

> The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible. The claimant's allegations of physical pain and mental impairments were inconsistent with the objective medical evidence of record for the reasons stated below. [¶] Despite her impairments, the claimant admitted activities of daily living included grocery shopping, using the computer, and performing household chores, such as washing off dishes, loading the dishwasher, sweeping the sidewalks, and watering her garden. Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required to perform these activities are inconsistent with the presence of an incapacitating or debilitating condition. [¶] Furthermore, the record reflected a significant gap in the claimant's history of treatment. According to the objective medical evidence of record, there was an eight-month gap between her treatment in February 2011 and her last surgery in October of 2011. [¶] The record revealed the claimant failed to follow-up on recommendations made by the treating doctors, which suggest that the symptoms

>   may not have been as serious as has been alleged in connection with this application and appeal. The claimant's treating physician instructed her to continue occupational therapy in April of 2010. She did not participate in occupational therapy until October of 2010 for about a month. By December of 2010, she was discharged from occupational therapy for failure to participate.

(AR 26-27).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence did not support the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[5]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v.

---

[5] The Court will not consider reasons for finding Plaintiff not fully credible (see Joint Stip. at 20) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ overstated Plaintiff's activities of daily living -- Plaintiff's ability to perform certain daily activities, such as grocery shopping, using the computer, washing off dishes, loading the dishwasher, sweeping the sidewalks, and watering her garden -- in assessing her credibility. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).

At the hearing, Plaintiff testified she could only do computer work for 10 to 15 minutes a day (see AR 41-42) and that she needed assistance with grocery shopping (see AR 42). In the questionnaire, Plaintiff stated she could do grocery shopping (but her husband carried in the heavy items), that she could do "some" watering, and that she needed her husband to help her with "normal" tasks. (See AR 174-75). It is not clear from the record, and the ALJ did not attempt to ascertain, the specifics, and/or extent, of Plaintiff's ability to wash dishes, load the dishwasher, sweep the sidewalks, and water the garden. Therefore, the degree to which Plaintiff could perform her admitted daily activities may not have been inconsistent with Plaintiff's testimony regarding her limitations. See Reddick v. Chater, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day

engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, the ALJ's finding that a gap in Plaintiff's history of treatment, from February 14, 2011 (see AR 685-86) to October 12, 2011 (her last surgery, see AR 716-17) had an adverse impact on her credibility was unsupported by the record. Although an ALJ may consider a claimant's unexplained or inadequately explained failure to seek treatment as a factor in the credibility determination, see Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991), the record reflects that Plaintiff *did* seek treatment during that period. Following Plaintiff's visit with Shane K. Williams, M.D., at Kaiser Permanente on February 14, 2011 (see AR 685-86 [noting that Plaintiff had a decreased sensation to light touch in all fingers, assessing bilateral hand pain and a possible atypical carpal tunnel syndrome, and indicating a discussion on surgical versus nonsurgical treatment options and a plan for wrist braces at night and activity modification]), Plaintiff sought treatment with Gilbert Lee, M.D. at Kaiser Permanente on May 31, 2011. Dr. Lee noted, inter alia, that Plaintiff complained of moderately severe elbow pain, had chronic thumb/wrist pain (for which she is going to have carpal tunnel release surgery), complained of depression (for which she earlier had been prescribed Buproprion) and examinations showed lateral epicondylar tenderness and a depressed mood. An elbow band was applied, Plaintiff was advised to avoid repetitive motion activities, and the option of a cortisone injection was discussed. (See AR 693-95). Contrary to the ALJ's assertion, Plaintiff *did* seek medical treatment between February 2011 and October 2011. Moreover, at the hearing, the ALJ did not ask Plaintiff about her failure to seek treatment during that period, or why she did not seek more treatment during that period.

Fourth, the ALJ discrediting Plaintiff's testimony based on the finding that Plaintiff had failed to follow-up with Dr. Lee's

10

instruction in April 2010 to continue occupational therapy and then only received such therapy in October 2010 (for about a month) and Plaintiff had been discharged from occupational therapy in December 2010 based on her failure to participate.  Although a claimant's failure to follow a prescribed course of treatment may serve as a reason for discrediting a claimant's testimony, see Bunnell v. Sullivan, supra, the ALJ's reliance on Plaintiff's failure to follow a prescribed course of treatment here is problematic.  Contrary to the ALJ's assertion, Dr. Lee did not recommend in April 2010 that Plaintiff continue with occupational therapy.  Rather, on April 29, 2010, Dr. Lee recommended continued *physical therapy*.  (See AR 248-50; see also AR 239 [noting that Plaintiff's first occupational therapy session was on March 18, 2010, and that Dr. Lee was the referring physician]).  Moreover, although Plaintiff did not attend occupational therapy from April 28, 2010 to October 21, 2010 (see AR 598-600, 603-06), and although Plaintiff did not return to occupational therapy after November 7, 2010 (see AR 277, 604-07, 651-53), the ALJ failed to ascertain why Plaintiff did not attend occupational therapy from April 28, 2010 to October 21, 2010 and/or why Plaintiff did not return to occupational therapy after November 7, 2010. [[Plaintiff contends (see Joint Stip. at 11-13), that she did not attend occupational therapy from April 28, 2010 to October 21, 2010 because the physical therapy sessions she had attended and the prescribed activity modifications/reduction were not producing sustained relief, and that she did not attend occupational therapy after November 7, 2010 because physical therapy was not producing sustained relief and because of a December 1, 2010 diagnosis of mild carpal tunnel syndrome on the right wrist.]]

The final reason given by the ALJ -- the lack of objective medical evidence for Plaintiff's symptoms and limitations -- cannot, by itself, support the credibility finding.  See Rollins v. Massanari, 261 F.3d

11

853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).[6]

B.  Remand Is Warranted

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy

---

[6] Contrary to Defendant's contention (see Joint Stip. at 16-18), the Court is unable to find that the ALJ's error in assessing Plaintiff's credibility is harmless, in light of Plaintiff's assertion that she is "limited to less than occasional use of her hands as would be required in [the park aid] job" (see Joint Stip. at 21). See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)("[W]e have said that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'"); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)(stating that an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'").

defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 17, 2015

                                              /s/
                                 ALKA SAGAR
                 UNITED STATES MAGISTRATE JUDGE